**Robert A. SCHEIB, as legal guardian of Carmella Grace Scheib, et al., Plaintiffs-Appellants,**

v.

**FLORIDA SANITARIUM AND BENEVOLENT ASSOCIATION, etc., et al., Defendants-Appellees.**

No. 84–3322.

United States Court of Appeals, Eleventh Circuit.

May 6, 1985.

Larry Klein, West Palm Beach, Fla., for plaintiffs-appellants.

Robert S. Greenspan, Carlene V. McIntyre, Wendy M. Keats, U.S. Dept. of Justice, Appellate Staff, Civil Div., Washington, D.C., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

In this medical malpractice action, brought by Robert A. Scheib, as legal guardian of Carmella Grace Scheib (Scheib), under the Federal Tort Claims Act, 28 U.S.C. Section 2674 (1982), the dis-

trict court found liability and damages in the amount of $1,033,619.84.[1] The only issues on this appeal are, (1) whether the damages in the amount of $476,000 received by Scheib pursuant to settlement agreements between Scheib and joint tortfeasors, Dr. Paul R. Garrett (Dr. Garrett) and Florida Sanitarium and Benevolent Association (Florida Hospital), should be set off under the provisions of sections 768.-041(2) and 768.31(5), Fla.Stat. (1983), against Scheib's damages awarded her against the Government, and (2) whether the $433,575.22 received by Scheib from a collateral source, Aetna Insurance Company (Aetna), should be deducted under the provisions of section 768.50, Fla.Stat. (1983), from Scheib's damages awarded her against the Government. The district court found the setoff and deduction proper. We agree and affirm.

The facts are not in dispute. Dr. Elenita Aleta had an M.D. degree and was working as a medical officer at the United States Navy Base in Orlando, Florida. Her negligence in the treatment of Scheib was a proximate cause of the injury and damage suffered by Scheib. Scheib has been unaware of her surroundings since her operation and her comatose condition is permanent. The district court found that Scheib had incurred past medical expenses of $3,567.00, past hospital expenses of $479,-823.34, and that her probable future hospital expenses will be $550,229.00, all of which total $1,033,618.34. The district court awarded her nothing for past or future pain and suffering.[2]

Florida Hospital and Dr. Garrett made pretrial settlements with Scheib in the amounts of $1,000.00 and $475,000.00, respectively, and were released from liability for all claims arising out of the injury to

Scheib. After trial, the Government filed a claim as a setoff against its liability for the $476,000 paid Scheib by Florida Hospital and Dr. Garrett. The district court found that since the joint tortfeasors had been sued for the same damages for which Scheib sought recovery against the Government, and since they had obtained releases from liability in return for their payments without apportioning the payments among the possible elements of damage, the settlement payments must be applied in their entirety as setoffs to reduce the damages obtained against the Government for the same injury in this suit.

Scheib was also paid $436,146.30 in health insurance benefits from Aetna for Scheib's past medical expenses.[3] The Government sought a reduction of damages assessed against it in the amount of this payment from a collateral source. The district court found that under the Federal Tort Claims Act the Government may be liable only "to the same extent as a private individual under like circumstances"; that the most closely analogous private individual to Dr. Aleta would be a licensed physician in the State of Florida, and that since such a licensed physician would be entitled to the benefit of section 768.50, Fla.Stat. (1983), (reducing the damages in a medical malpractice action against a health care provider by the amounts paid by collateral source), the statute must apply to reduce the liability of the Government in this case. The district court therefore entered judgment for Scheib as follows:

| | |
|---|---|
| Total Award | $1,033,619.34 |
| Less Setoffs | 436,000.00 |
| Less Net Collateral Source Payments | 433,575.22 |
| | $ 909,575.22 |
| Net Damages | $ 124,044.12 |

1. The action was originally filed in the state court against the United States and several nonfederal defendants. It was removed as to the claims against the Government to the district court under 28 U.S.C. 1441(a) (1982).

2. Mrs. Scheib's husband was awarded damages for expenses, loss of services, and loss of companionship. The parties agreed, and the district court found, that the settlements made by Flor-

ida Hospital and Dr. Garrett with Mr. Scheib extinguished the liability of the Government to him.

3. This amount was reduced by $2,571.08 in premiums paid by Scheib so that the amount in the final judgment for net collateral source payments was $433,575.22.

Scheib's argument that the district court erred in setting off the amounts received by her from Florida Hospital and Dr. Garrett ($476,000) pursuant to Fla.Stat. section 768.041(2) (the setoff statute)[4] and section 768.31(5) (Florida's enactment of the Uniform Contribution Among Tortfeasors Act)[5] is premised upon the fact that the trial court awarded nothing to Scheib for pain, suffering, disability, loss of enjoyment of life, or any intangible element of damage. Her recovery was limited to past medical expenses and past and future hospital expenses. The attorneys for Florida Hospital and Dr. Garrett filed affidavits stating that in evaluating and settling their claims, they were aware of their entitlement to a deduction for damages of the amounts paid by Aetna as a collateral source under Section 768.50, Fla.Stat. and that because of the existence of the statute the amounts of the settlements paid to Scheib did not include any sum for the payment of medical expenses. In other words, since Aetna was paying Scheib's medical expenses, Florida Hospital and Dr. Garrett had no liability for such expenses by virtue of the collateral source statute. Thus, Scheib argues, there is a clear distinction between the damages recovered by Scheib by way of the settlements and the damages awarded her by the court.

In support of her argument Scheib relies on *Prince v. American Indemnity Company*, 431 So.2d 270, 271 (Fla. 5th DCA 1983), *Devlin v. McMannis*, 231 So.2d 194 (Fla.1970), and *City of Tamarac v. Garchar*, 398 So.2d 889 (Fla. 4th DCA 1981). We find these cases inapposite. *Prince* held that an insurance company could not obtain subrogation for moneys it paid under an automobile insurance policy against a settlement with the tortfeasor because, under the Florida collateral source rule for automobile torts, section 627.7372, Fla.Stat. (1983), the tortfeasor would have been entitled to a reduction of its liability by the amount of the insurance payments as payments from a collateral source. Thus, the court concluded, the settlement could not have included the amount being claimed by the insurance company in subrogation. This supports Scheib's contention that Florida Hospital and Dr. Garrett would have been entitled to reduce their liability to Scheib by the amount of the Aetna payment for a part of the past medical expenses (which is not in dispute), and that the settlements of her claims against them could not be setoff against that already-covered element of her damages. But there can be no doubt that Florida Hospital and Dr. Garrett would have been liable for the balance of Scheib's past medical expenses of $49,815.02, plus the full $550,229.00 award of future medical expenses from which the collateral source rule would not protect them.

In *Devlin v. McMannis, supra,* suit was brought by the father as executor of his son's estate, coupled with a cause of action by father and mother in their own behalf for the wrongful death of their son. The court held that the identity of the separate causes of actions must be preserved and that the damage elements cannot be mingled unless it appears they constitute recoveries for the same injury. 231 So.2d at 196. In the case *sub judice*, Scheib sued both the Government and the private defendants for the same injury and the same damages.

**4.** Section 768.041(2), Fla.Stat. (1983), provides in pertinent part:

At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.

**5.** Section 768.31(5), Fla.Stat. (1983), provides in pertinent part:

(5) Release or covenant not to sue. When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: (a) ... it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater.

Likewise, in *City of Tamarac v. Garchar, supra,* there were separate causes of action by a husband and wife on account of the husband's injury by joint tortfeasors. The court refused to set off against the husband's jury verdict the amounts received by the wife in a settlement which exceeded her share of the jury verdict, insisting that damages for separate causes of action must be separate.

■ The Florida courts have consistently applied the Uniform Contribution Among Tortfeasors Act, section 768.31(5), Fla.Stat. (1983), to reduce the judgment against a remaining defendant in the full amount of any settlement. *Department of Transportation v. Webb,* 409 So.2d 1061 (Fla. 1st DCA 1981), *modified on other issues,* 438 So.2d 780 (Fla.1983); *Eller & Co., Inc. v. Morgan,* 393 So.2d 580 (Fla. 1st DCA 1981), *petition denied,* 399 So.2d 1141 (Fla.1981).

Finally, the settlement agreements did not attempt an apportionment between "tangible" and "intangible" elements of damages. The district court properly held that even if such an apportionment could be permitted under the plain terms of the Florida statutes, if the court were "required to fathom the discrete elements of damages which were intended to equate with the dollar value of a given release before it could apply Section 768.041(2), the court would be led into a grossly speculative endeavor unwarranted by the provisions of 768.041(2)."

The district court correctly reduced the damages awarded Scheib against the Government by way of setoff of the full amounts of her settlements with Florida Hospital and Dr. Garrett.

## THE COLLATERAL SOURCE PAYMENTS

Under the insurance health plan of Aetna, it paid $433,575.22 for Scheib's medical expenses. The district court reduced Scheib's award against the Government by this amount, holding that the Government was entitled to the benefit of the Florida collateral source statute, section 768.50, Fla.Stat. (1983). That statute provides in pertinent part:

768.50. Collateral sources of indemnity.

(1) In any action for damages for personal injury or wrongful death, whether in tort or in contract, arising out of the rendition of professional services by a health care provider in which liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts paid to the claimant from all collateral sources which are available to him; ...

....

(2) For purposes of this section:

(a) "Collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to:

....

2. Any health, sickness, or income disability insurance; ...

(b) "Health care provider" means hospitals licensed under Chapter 395; physicians licensed under Chapter 458; ...

■ Scheib argues that since Dr. Aleta, an armed forces medical officer on active duty, was specifically exempted from the licensing requirement in Florida, under Chapter 458, and was not so licensed, she was not a "health care provider" as defined in that statute, and that the amount awarded to Scheib against the Government should not be reduced by the amount paid Scheib by Aetna. The district court found this argument unpersuasive. It held that under the Federal Tort Claims Act, 28 U.S.C. 2674 (1982), the Government may be held liable only "to the same extent as a private individual under like circumstances ...", and that in this case, for the purpose of measuring the Government's liability, the most analogous private individual would be a licensed physician practicing family medicine in the State of Florida. Therefore, since such a physician would be entitled to the benefits of section 768.50,

Fla.Stat. (1983), the Government is entitled to the benefits of that statute. We agree.

Under the Federal Tort Claims Act, the Government's waiver of immunity from suit for the negligent acts or omissions of its employees, acting within the scope of their employment, was expressly limited to those instances where the United States would be liable if a private person "under like circumstances" would be liable "in accordance with the law of the place where the act or omission occurred." *See* 28 U.S.C. 2674. This clearly means that state law cannot expand the Government's liability beyond that which could flow from an analogous private activity. Thus in *Thomas v. Calavar Corp.*, 679 F.2d 416 (5th Cir.1982), and *Roelofs v. United States*, 501 F.2d 87 (5th Cir.1974), *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975), the Government, in suits under the Federal Tort Claims Act for injuries to workmen employed by a contractor on a federal construction project, was entitled to the benefit of the protection from tort liability which is given to a private employer using a contractor under the Louisiana Workmen's Compensation statute, even though the Government did not, and could not be, required to meet the statutory definition of an employer under the Louisiana law. The courts held that since the Government, if a private person, would have been a statutory employer in the circumstances, the limitations of the workmen's compensation scheme applied. To the same effect, *see Griffin v. United States*, 644 F.2d 846 (10th Cir.1981). See also *Gard v. United States*, 594 F.2d 1230 (9th Cir.1979), and *Simpson v. United States*, 652 F.2d 831 (9th Cir.1981) (state recreational use statutes, protecting private landowners from civil tort liabilities apply to the Government as a defendant under the Federal Tort Claims Act).

The limitation of the Government's liability under the Act to the same extent as a private party applies to any limitation on damages. *See Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Gill v. United States*, 429 F.2d 1072 (5th Cir.1970), including the application of state law collateral source rules. *See Siverson v. United States*, 710 F.2d 557 (10th Cir.1983).

The district court properly applied the Florida collateral source rule to reduce the judgment in favor of Scheib against the Government by the amount paid her by Aetna.

AFFIRMED.