[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-17035

_____

D. C. Docket No. 03-00709-CV-J-25-TEM

TRACEY T. TURNER,
a minor by and through his parents and next
friends, TRACY R. TURNER, mother, and
TRACEY TURNER, father, and
TRACEY R. TURNER, individually, and
TRACEY TURNER, individually,

                                                    Plaintiffs-Appellees,

                              versus

UNITED STATES OF AMERICA,

                                                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 28, 2008)**

Before BIRCH and BLACK, Circuit Judges, and MILLS,[*] District Judge.

BIRCH, Circuit Judge:

In this appeal, we determine the proper standard of care in a case against the government under the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§ 2671-80, arising from emergency medical treatment provided at a military hospital in the state of Florida. The district court held that liability should be decided under an ordinary negligence standard of care, and not the "reckless disregard" standard codified in the Florida "Good Samaritan Act," Fla. Stat. § 768.13 ("GSA"). We also determine whether an administrative claim on behalf of a minor child satisfies the jurisdictional requirements of the FTCA as to his parents' claims, when the child's claim states that the parents have suffered damages, but neither lists the parents as claimants nor provides a sum certain for their claims. The district court held that the child's claim satisfied all statutory prerequisites for the parents' claims. We REVERSE IN PART, VACATE IN PART, AFFIRM IN PART, and REMAND this case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On 27 August 2001, at 8:20 P.M., Tracey T. Turner ("Tracey"), then a nine

---

[*] Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

year-old boy, presented to the emergency department of Naval Hospital Jacksonville ("NHJ") while having a severe asthma attack. Earlier that day, Tracey; his father, Tracey Turner ("Mr. Turner"), a Naval corpsman; and his mother, Tracy R. Turner ("Mrs. Turner"), a practical nurse, drove to Jacksonville from Alabama where they had been visiting relatives. Tracey had been suffering from the symptoms of asthma throughout most of the day, and he had made frequent use of his albuterol inhaler during the trip. When Tracey arrived at NHJ, he was able to see and to walk. Lieutenant Commander Shane Cline, M.D. (Dr. Cline"), assessed Tracey's condition, found him to be "in extremis," and concluded that he was appropriately triaged as an "urgent case." Turner v. United States, No. 3:03-CV-709-J-25TEM, slip op. at 2 (M.D. Fla. Aug. 26, 2005).

Dr. Cline ordered that Tracey receive the following treatments: Albuterol/Atrovent Nebulizer, Solumedrol, and Magnesium Sulfate. The district court found that at least half an hour elapsed before Tracey received Solumedrol, he never received the Magnesium Sulfate, and it is unclear if he received the Atrovent. The district court also found that "[t]he failure to administer these medicines as ordered by" Dr. Cline violated the standard of care. Id. The Albuterol/Atrovent Nebulizer treatment was not effective, and the parties agreed that Tracey needed to be intubated using Rapid Sequence Intubation ("RSI").

3

Experts for both the Turners and the government agreed that Tracey's need for RSI was apparent around 8:40 P.M, and Dr. Cline testified that RSI was indicated at 8:45 P.M., when Tracey's mental state deteriorated. At that time, Tracey became violent, grabbed his mother by the hair, and pulled out his IV. The district court found that RSI should have been accomplished within five minutes of apparent need. Because of various complications, numerous attempts at RSI were unsuccessful, and Tracey was not intubated until 9:17 P.M. The district court found that the intervening events between the time RSI was indicated and the time Tracey was actually intubated demonstrated that the Navy was "careless." Id. at 3.

Tracey survived his asthma attack, but he suffered brain damage and severe injuries resulting from oxygen deprivation. Tracey incurred cortical blindness, which has permanently reduced his vision to 20-400 in each eye, and is non-correctable. As a result of his blindness, he had to withdraw from regular public school and enroll in the Florida School for the Deaf and Blind. In addition, Tracey has suffered neuro-psychological problems, a loss of sensory function in his hands, and his performance in school has diminished from above-average to below-average.

In response to Tracey's injuries, the Turners filed three separate Standard Form 95s ("SF-95") with the Navy on behalf of three individual claimants:

Tracey, Mr. Turner, and Mrs. Turner. The first claim was filed on 21 January 2003[1], naming as the claimant "Tracey T. Turner, by and through his mother and next friend, Tracy R. Turner." R1-15 at Ex. A-1. The basis for the claim was described as follows:

> 1) Tracey T. Turner suffered severe and permanent injury to his eye sight and to his ability for gross motor movement as well as disfigurement, pain and suffering and other intangible losses. 2) Mr. and Mrs. Turner suffered tangible damages, including medical expenses past and future, as well as intangible damages consistent with a loss of consortium under Florida law.

Id. The "Amount of Claim" was stated as $6,000,000. Id. On 23 January 2003, an attorney for the Navy wrote to the Turners' trial counsel, acknowledging receipt of the first SF-95 and requesting further information regarding Mr. and Mrs. Turner's "intent to seek damages individually (on their own behalf)." R1-15 at Ex. B-1. On 26 February 2003, the Navy received two more SF-95s, naming Mr. Turner and Mrs. Turner as the claimants, respectively, containing the same description of the claim as provided in the original claim, and stating $3,000,000 as the amount of each claim. After receiving the parent's claims, the Navy believed that the Turners

_____

[1] The date the claim was actually received by the Navy constitutes the effective filing date, not the date on which is was dated or mailed. Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1237 (11th Cir. 2002) ("A claim is deemed to be presented 'when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain . . . .'" (quoting 28 C.F.R. § 14.2 (2001))).

intended to divide the $6,000,000 sum certain stated in the original 21 January 2003 claim equally between their newly filed claims. An attorney for the Navy wrote to the Turners' trial counsel, confirming that belief. The Turners' trial counsel responded by letter and explained that:

> there are three (3) claims filed in this matter rather than two (2) as indicated in your letter. The first claim was filed on December 13, 2002, on behalf of [Tracey] . . . This claim is for $6,000,000 . . . the last two claims were presented and filed on February 24, 2003, on behalf of [Mrs. Turner] for $3,000,000.00 and [Mr. Turner] for $3,000,000.00, a total of three (3) filed claims, totaling $12,000,000.00.

R1-15 at Ex. H-1.

On 21 August 2003, after six months had passed from the filing date of the first SF-95, but less than six months from the filing date of the two subsequent SF-95s, the Turners filed their original three-count complaint.[2] Count I is a negligence claim on behalf of Tracey; Count II is a loss of consortium claim on behalf of Mrs. Turner, and Count III is a loss of consortium claim on behalf of Mr. Turner. Consistent with their administrative claims, the Turners sought a total of $12,000,000 in damages; $6,000,000 for Tracey's claim, and $3,000,000 each for Mr. and Mrs. Turner's claims. On 8 September 2003, after receiving the Turners'

---

[2] The Turners amended their complaint on 27 October 2003, but the amended complaint has no bearing upon the jurisdictional issues under review in this case. See McNeil v. United States, 508 U.S. 106, 110-12, 113 S. Ct. 1980, 1982-84 (1993).

original complaint, the Navy denied the Turners' administrative claims.

The government filed a motion to dismiss with prejudice for lack of subject matter jurisdiction, or in the alternative, a motion for summary judgment. The government argued that the district court lacked subject matter jurisdiction over Mr. and Mrs. Turner's claims because the complaint was filed less than six months after their administrative claims were filed with the Navy. The district court treated the government's motion as a motion for partial summary judgment, having reviewed the additional material provided by the government in support of its motion. The district court held that the "mention of [Mr. and Mrs.] Turner's claims" in the original SF-95 "was sufficient to place the Navy on notice" of their claims for loss of consortium. Turner v. United States, No. 3:03-CV-709-J-25TEM, slip op. at 8 (M.D. Fla. Apr. 1, 2005). Since the Turners' suit was initiated more than six months from the filing date of that claim, the district court held that it had jurisdiction over all three of the Turners' claims and denied the government's motion.

The case was tried before the district court on counts I, II, and III of the Turner's amended complaint. The government argued that liability should be assessed under the "reckless disregard" standard of care codified in the GSA, rather than a simple negligence standard of care. The government also contended

7

that Mr. and Mrs. Turner were comparatively negligent for failing to seek medical care for Tracey earlier in the day. The district court filed its judgment on 26 August 2005. Initially, the district court held that the 2001 version of the GSA would be operative in this case, if it were applicable to NHJ.[3] However, since NHJ is not a hospital licensed under chapter 395 of the Florida Code, the district court held that the 2001 version of the GSA does not apply to NHJ. Then, in determining liability under an ordinary negligence standard, the district court concluded that the doctors and nurses at NHJ were negligent in their treatment of Tracey, proximately causing his injuries. Finally, the district court held that there was no legal or factual basis for holding Mr. and Mrs. Turner comparatively negligent for failing to seek medical attention for Tracey sooner than they did. The Turners sought an aggregate maximum recovery of $12,000,000 for their three claims. The district court awarded both economic and non-economic damages, totaling $5,982,445, consisting of $4,364,327 for Tracey's claim, and $809,059 each for Mr. and Mrs. Turner's claims.

---

[3] The district court recognized that the Florida legislature intended the 2003 version of the GSA to be applied retroactively, and noted that it "would seem to cover" NHJ, but held that applying the 2003 version retroactively would be unconstitutional under Florida law, because it would impair the Turners' "vested right" to recover damages from the Navy. Turner v. United States, No. 3:03-CV-709-J-25TEM, slip op. at 8, 10 (M.D. Fla. Aug. 26, 2005). This was error. Under Florida law, amendments to a statutory burden of proof are "procedural in nature," not substantive, and "may be applied retroactively" because they do not "impair or eliminate" the plaintiff's right to recover damages. DaimlerChrysler Corp. v. Hurst, 949 So. 2d 279, 287-88 (Fla. Dist. Ct. App. 2007).

8

The government filed a post-trial motion under Rules 50(c) and 59(e) of the Federal Rules of Civil Procedure, requesting the district court to find that the GSA applies to NHJ in this case, to amend its findings of fact and conclusions of law, and to enter judgment in favor of the government. In response to the government's motion, the Turners conceded that the government was "entitled to the benefit of Florida's Good Samaritan Act regardless of whether or not [NHJ] was licensed" under Florida law. The Turners recommended that the district court amend its decision to find that the GSA applies to the government and that the government breached the "reckless disregard" standard of care. The district court denied the government's motion and rejected the parties' request to reconsider its ruling on the applicability of the GSA. The district court reiterated its holding that the 2001 version of the GSA does not apply to NHJ because it is not a hospital licensed under chapter 395 of the Florida Code. Further, the district court found that NHJ is most "analogous to a private hospital which provides services to a select group of patients, rather than a hospital, licensed under chapter 395, which is required to provide[] services to *all patients*." Turner v. United States, No. 3:03-CV-709-J-25TEM, slip op. at 6 (M.D. Fla. Oct. 24, 2005). This appeal followed.

9

## II. DISCUSSION

A. <u>Jurisdiction Over Mr. and Mrs. Turner's Claims Under the FTCA</u>

Initially, we must decide whether the original SF-95, submitted on 21 January 2003, was sufficient to notify the Navy of Mr. and Mrs. Turner's claims and fulfill the statutory prerequisites of the FTCA. The Turners initiated their suit against the government more than six months after the original SF-95 was filed, but less than six months after the second two SF-95s were filed. If the original SF-95 did not provide the Navy with sufficient notice of Mr. and Mrs. Turner's claims, the district court lacked jurisdiction over them. We hold that the original SF-95 presented only Tracey's claim, and did not satisfy the statutory prerequisites for Mr. and Mrs. Turner's claims.

"The FTCA is a specific, congressional exception" to the United States' sovereign immunity for tort claims, under which the government may "be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." <u>Suarez v. United States</u>, 22 F.3d 1064, 1065 (11th Cir. 1994) (per curiam). However, this waiver "must be scrupulously observed, and not expanded, by the courts." <u>Id.</u> A federal court does not have "jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency . . . within two years from the time the claim accrues . .

10

. accompanied by a claim for money damages in a sum certain." Dalrymple v. United States, 460 F.3d 1318, 1324 (11th Cir. 2006) (citing 28 U.S.C. §§ 2675, 2401(b); 28 C.F.R. § 14.2(a)). The sum certain requirement of § 2675(a) serves a valuable purpose; it informs the government of the maximum amount of a claim, enabling the government to evaluate whether to settle a claim or proceed to trial. See Tidd v. United States, 786 F.2d 1565, 1568 (11th Cir. 1986). Before instituting a federal suit, the claimant must wait either until the administrative agency finally denies the claim or until at least six months have passed after the claim was filed. 28 U.S.C. § 2675(a). Because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," the district court lacks subject matter jurisdiction over prematurely filed suits. McNeil v. United States, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984 (1993).

"The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government." Dalrymple, 460 F.3d at 1325. Thus, "in multiple claimant actions under the FTCA, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim." Id. (citation omitted). If the claimant fails to provide a sum certain within the claim, the administrative claim "fails to meet the statutory prerequisite to maintaining a suit against the government, and leaves the district court without jurisdiction to

11

hear the case." Id. at 1324 (citation omitted). Although we have stated that we take "a somewhat lenient approach to the 'sum certain' requirement," Tidd, 786 F.2d at 1567 n.6, "we have held that the FTCA requires, at a minimum, that a claimant expressly claim a sum certain or provide documentation which will allow the agency to calculate or estimate the damages to the claimant." Dalrymple, 460 F.3d at 1325 (citation omitted).

It is clear from the record that the Turners intended to file three separate claims with the Navy: Tracey's claim for $6,000,000 and Mr. and Mrs. Turner's claims for $3,000,000 each. Tracey's claim was filed on 21 January 2003, by the original SF-95, and the complaint was filed on 12 August 2003, which was over six months from the filing date of that claim. Under the FTCA, Tracey's claim was deemed exhausted and the district court had jurisdiction over it. See 28 U.S.C. § 2675(a). However, Tracey's claim did not fulfill the sum certain requirement of § 2675(a) with respect to his parents' claims. Even if the Turners intended their original SF-95 to present each of their claims, and an aggregate sum certain for those claims, that form was deficient because it neither listed Mr. and Mrs. Turner as claimants nor specified the individual amounts of their claims. Multiple claimants may submit one form containing all claims, and provide an aggregate sum certain for all of the claims, but only under certain circumstances. See, e.g.,

12

Campbell v. United States, 795 F. Supp. 1118, 1121-22 (N.D. Ga. 1990) (finding that a single SF-95 presented claims of mother, father, and minor child, because claimant specifically named both husband and child as "claimants," described each claim, and the government treated all three as claimants during settlement process).

We find that Mr. and Mrs. Turner's claims were not filed with the Navy until 26 February 2003, the date on which the Navy received Mr. and Mrs. Turner's individual SF-95s. These SF-95s named Mr. and Mrs. Turner, respectively, as claimants, explained the basis for their claims, and, most critically, provided the amount of their claims. In this case, unlike Campbell, the Turners did not designate themselves as claimants in the original SF-95; the only claimant listed in the original SF-95 was Tracey. Further, the Navy did not treat the initial SF-95 as presenting three claims. Even though the original SF-95 may have indicated that Mr. and Mrs. Turner could potentially file claims of their own, they were not listed as claimants and no amount was provided for their potential claims. The Navy concluded that the only claim contained in that SF-95 was Tracey's and requested Mr. and Mrs. Turner to submit a separate SF-95 if they intended to assert their own claims. We find that the Navy acted reasonably by seeking additional information in response to the original SF-95. Mr. and Mrs. Turner each then filed an SF-95, establishing, for the first time, that the sum certain of their claims was

13

$3,000,000 each.[4]  Until the Navy received Mr. and Mrs. Turner's individual

claims, no sum certain ever had been provided for their claims, as opposed to

Tracey's claim.  Before the Navy received Mr. and Mrs. Turner's SF-95s, the Navy

could not have known that they were making individual claims for $3,000,000

each, or that the Turners were demanding a total of $12,000,000 for their claims.

In fact, the chain of correspondence between the Navy and the Turners' trial

counsel shows that the Navy was unaware that Mr. and Mrs. Turner were making

individual claims for $3,000,000 even after those claims were filed.  Instead, the

Navy believed that the Turners intended to divide Tracey's claim "into separate

claims brought by each parent."  R1-15 at Ex. G-1.  The Turners' trial counsel then

informed the Navy that "there are three (3) claims filed in this matter," one for

$6,000,000 on behalf of Tracey, and two for $3,000,000 each on behalf of Mr. and

---

[4] In the Turners' response to the government's motion to dismiss, they argued that the
original SF-95 provided a "sum certain, $6 million, for all the claims" contained in that form.
R1-22 at 5.  The Turners maintained that the original SF-95 was sufficient to inform the Navy of
Mr. and Mrs. Turner's claims, in addition to Tracey's claim.  The Turners stated that they
"amended their claims to total $12 million ($6 million for Tracey T. Turner and $3 million each
for the Parents)" through further correspondence with the Navy.  Id. at 6 n.5.  Further, at oral
argument, the Turners' counsel suggested that the Navy "duped" the Turners into providing
more information than necessary to properly file their claims.  We disagree, and our analysis and
conclusion are unaffected by this argument.  If the Turners intended the original SF-95 to present
all three claims, we find that they easily could have amended it to list Mr. and Mrs. Turner as
claimants, and to restate their original demand for $6,000,000 as the aggregate of the amounts
sought for the three separate claims.  See Campbell v. United States, 795 F. Supp. 1118, 1121-22
(N.D. Ga. 1990).  Instead, Mr. and Mrs. Turner filed separate SF-95s for their individual claims
and provided $3,000,000 as the sum certain for each of those claims, which doubled their
damages claim.  This signifies to us that Mr. and Mrs. Turner's claims were not presented by the
original SF-95.

14

Mrs. Turner, respectively. Id. at Ex. I-1.

At trial, the Turners sought a maximum recovery of $12,000,000, which is consistent with the three SF-95s, their complaint, and trial counsel's correspondence with the Navy. Now, on appeal, the Turners ask us to ignore the parents' individual claims for $3,000,000 each, and their affirmative representations to the Navy that they filed three separate claims totaling $12,000,000, in order to conclude (1) that Mr. and Mrs. Turner's claims were properly presented by Tracey's claim and (2) that the $6,000,000 sum certain in his claim applied to all three claims. The Turners' argument lacks merit and, if accepted, would render meaningless the sum certain requirement. Accepting the Turners' argument would require us to conclude that their three claims were (a) presented jointly in the original SF-95, and worth $6,000,000, and (b) presented individually in the subsequent SF-95s, and worth $12,000,000. This is an untenable position. If the Turners' claims were worth either $6,000,000 or $12,000,000, their claims were not for a sum certain. As we have explained, it is clear that the Turners' original SF-95 presented only Tracey's claim for $6,000,000, not three claims with an aggregate value of $6,000,000. It is equally clear that Mr. and Mrs. Turner filed their own individual claims for $3,000,000 through separate SF-95s. The Turners may not annul their individual claims and

15

recharacterize Tracey's claim on appeal in an attempt to save the district court's jurisdiction. Mr. and Mrs. Turner's claims were not exhausted when they filed their complaint, and the district court lacked jurisdiction over those claims. See McNeil, 508 U.S. at 113, 113 S. Ct. at 1984. Since the Turners could have prevailed at trial only upon Tracey's claim, the district court's award as to Mr. and Mrs. Turner's claims consists of damages to which the Turners are not entitled.

We conclude that Tracey's claim does not satisfy the statutory prerequisites for Mr. and Mrs. Turner's claims. Because the complaint in this case was filed less than six months from the date Mr. and Mrs. Turner's claims were filed with the Navy, the district court lacked jurisdiction over those claims. Accordingly, we vacate the district court's award of damages on those claims.[5]

---

[5] Mr. and Mrs. Turner are now barred from refiling their complaint since it is well over six months from the date their claims were finally denied by the Navy. 28 U.S.C. § 2401(b) (a tort claim against the United States "shall be forever barred" unless it is presented within six months after the date of final agency denial.); see also McNeil, 508 U.S. at 109-11, 113 S.Ct. at 1982-84 (finding that a federal district court lacks jurisdiction over complaint filed prior to exhaustion of administrative remedies; complaint filed before such exhaustion does not become effective upon final agency denial, and plaintiff was required to file new action within six months of final agency denial); Gregory v. Mitchell 634 F.2d 199, 204 (5th Cir. Jan. 1981) (stating that jurisdiction under FTCA "must exist at the time the complaint is filed," and a court may not "stay or hold in abeyance" a premature claim "until the six month period accrues" in a case where plaintiffs did not wait the required six months or receive final agency denial of claim.). Even if the time limitations under the FTCA could be tolled, the Turners did not raise the issue on appeal, and it must be deemed abandoned. See Dalrymple v. United States, 460 F.3d 1318, 1324 n.6.

B.  Standard of Care

Next, we must determine the correct standard of care applicable to Tracey's

claim.  The government argues that the district court erred in applying an ordinary

negligence standard of care to the duties owed to the Turners by NHJ's staff

instead of the "reckless disregard" standard found in the GSA.[6]  For the reasons

that follow, we agree.

"We review the application of the FTCA *de novo*."  Pate v. Oakwood

Mobile Homes, Inc., 374 F.3d 1081, 1083 (11th Cir. 2004).  Under the FTCA, the

United States is liable for tortious conduct "in the same manner and to the same

extent as a private individual under like circumstances" after applying the

applicable law in the same jurisdiction.  28 U.S.C. § 2674.  The Supreme Court has

stated that "the words 'like circumstances' do not restrict a court's inquiry to the

*same circumstances*, but require it to look further afield."  United States v. Olson,

546 U.S. 43, 46, 126 S.Ct. 510, 513 (2005) (citation omitted).  Accordingly, along

with several sister circuits, we interpret the "like circumstances" requirement not to

be as strict as an "identical" or "same" circumstances test.  E.g., Haceesa v. United

_____

[6] In its order dated 24 October 2005, the district court held that the government waived the affirmative defense provided by the GSA by failing to provide proper notice to the Turners under Federal Rule of Civil Procedure 8(c).  The government raised the GSA as an affirmative defense in their trial brief, filed on 25 February 2005, and the Turners acknowledged that they were aware of the government's intent to rely upon the GSA in their response to the government's post-trial motion.  We find that the government timely raised the GSA as an affirmative defense and we reverse that part of the district court's judgment.

17

States, 309 F.3d 722, 726 n.3 (10th Cir. 2002) ("[T]he 'like circumstances' inquiry requires only that the United States be analogized to a similarly situated private party . . . ." (citation omitted); Stratmeyer v. United States, 67 F.3d 1340, 1345 (7th Cir. 1995) ("When deciding what the liability of a private entity operating under 'like circumstances' would be, we note that the 'like circumstances' comparison is not as demanding as an 'identical circumstances' test would be."); Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) ("[W]hat is meant by 'like circumstances' is analogous circumstances not identical ones."). Congress' chief intent in drafting the FTCA was simply to provide redress for ordinary torts recognized by state law. Pate, 374 F.3d at 1084.

Whether NHJ is liable for Tracey's injuries depends on whether a similarly situated private hospital would be liable for those injuries under Florida law. Under Florida law, "[t]o prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015, 1018 (Fla. 1984). If a defendant may rely on the GSA, the plaintiff must establish that the defendant acted with "reckless disregard for the consequences" of his or her actions. Fla. Stat. § 768.13(2)(b)1. As of the date of Tracey's injuries, the GSA

18

provided that:

> Any hospital licensed under Chapter 395, any employee
> of such hospital working in a clinical area within the
> facility and providing patient care, and any person
> licensed to practice medicine who in good faith renders
> [emergency] medical care or treatment . . . shall not be
> held liable for any civil damages as a result of such
> medical care or treatment, unless such damages result
> from providing, or failing to provide, medical care or
> treatment under circumstances demonstrating a reckless
> disregard for the consequences so as to affect the life or
> health of another.

Fla. Stat. § 768.13(2)(b)1 (2000). In 2003, the GSA was amended to apply to

"[a]ny health care provider, including a hospital licensed under chapter 395,

providing emergency services pursuant to obligations imposed by 42 U.S.C. §

1395dd, § 395.1041, § 395.401, or § 401.45 . . . ." Fla. Stat. § 768.13(2)(b)1

(2005).[7] "Reckless disregard" was defined in the 2001 version of the GSA as:

> such conduct which a health care provider knew or
> should have known . . . would be likely to result in injury
> so as to affect the life or health of another, taking into
> account . . . (a) [t]he extent or serious nature of the
> circumstances prevailing[,] (b) [t]he lack of time or
> ability to obtain appropriate consultation[,] (c) [t]he lack
> of a prior patient-physician relationship[,] (d) [t]he
> inability to obtain an appropriate medical history of the
> patient[,] (e) [t]he time constraints imposed by coexisting

---

[7] The Florida legislature gave the 2003 revision of the GSA retroactive effect "to prior medical incidents, to the extent such application is not prohibited by the State Constitution or Federal Constitution . . . ." 2003 Fla. Laws, ch. 2003-416, § 86 (eff. Sept. 15, 2003). Because we hold that the government was entitled to the protection of either version of the GSA, we do not decide whether the 2001 or 2003 version applies in this case.

emergencies.

Fla. Stat. § 768.13(2)(b)3 (2000). The definition of "reckless disregard" was also amended. "Reckless disregard" is defined in the 2003 version of GSA as "conduct that a health care provider knew or should have known, at the time such services were rendered, created an unreasonable risk of injury so as to affect the life or health of another, and such risk was substantially greater than that which is necessary to make the conduct negligent." Fla. Stat. § 768.13(2)(b)3 (2005).

According to the district court, NHJ cannot rely on the 2001 version of the GSA because it is not a hospital licensed under Florida law, and because NHJ is analogous to a specialty hospital, which provides treatment only to a select group of persons, not to all persons. On appeal, the Turners argue that neither the 2001 nor the 2003 version of GSA applies to NHJ because NHJ does not comply with the Florida anti-patient dumping statute, Fla. Stat. § 395.1041, and "does not treat all patients as required by" Fla. Stat. § 768.13(2)(b)4. Appellees' Br. 21. According to the Turners, the GSA cannot be applied to NHJ since it does not treat "all members of the general public suffering from an emergency condition." Id. at 23.

We conclude that both the district court and the Turners seek to hold NHJ to a stricter standard than the FTCA requires. First, NHJ is eligible to benefit from

the GSA, even though it is not licensed by the state. Second, NHJ's obligation to provide emergency medical services to all persons within its beneficiary population is analogous to the duty of a hospital licensed under chapter 395 to provide such services to all persons. Third, although the Turners accept that NHJ "is similarly situated to" a state-licensed hospital, the Turners essentially argue that NHJ cannot benefit from the GSA unless NHJ operates identically to such hospitals. The FTCA does not demand this degree of similarity between a military hospital and other Florida hospitals in order to grant NHJ the benefit of the GSA. Haceesa, 309 F.3d at 726 n.3; Stratmeyer, 67 F.3d at 1345; Doe, 58 F.3d. at 497.

Under the FTCA, our inquiry is not focused upon whether NHJ operates identically to those entities specifically enumerated in the GSA, but whether NHJ is sufficiently analogous to them in order to receive the protection of the statute. We find that it is. As a military hospital, NHJ is not situated identically as compared with other Florida hospitals. NHJ exists primarily to serve the medical needs of members of the Navy, and their spouses and dependents, not the general population of the state of Florida. NHJ's mission statement reflects that its primary mission is to serve the medical needs of members of the Navy, though "[i]n an emergency," it may provide care to "any person . . . to prevent undue suffering or loss of life or limb." 32 C.F.R. § 728.81(a); see also 32 C.F.R. §

21

728.1. NHJ is not licensed by the state, nor does it comply with the Florida statutes listed in the GSA. However, the differences between NHJ and state-licensed hospitals do not prevent the government from benefitting from the GSA. In Scheib v. Florida Sanitarium & Benevolent Ass'n, 759 F.2d 859, 863-64 (11th Cir. 1985), we held that an armed forces medical doctor, exempt from Florida's physician licensing requirement, was eligible to benefit from the immunity afforded by Florida's collateral source statute, Fla. Stat. § 768.50 (1983), which reduced a damage award against her. The plaintiff in Scheib argued that the state statute did not apply to the government because the doctor was not licensed by the state. In the course of our reasoning, we agreed with the district court that, under the FTCA, the most analogous private individual to an armed services doctor is a "licensed physician practicing family medicine in the State of Florida." Id. at 863-64. We further recognized that the government was not, and the state could not require it to be, in compliance with the licensing requirements of Florida law. Id. at 864; see also Taylor v. United States, 821 F.2d 1428, 1431-32 (9th Cir. 1987) (explaining that, by virtue of the Supremacy Clause of the United States Constitution, a state can not require a military hospital to comply with state licensing requirements). Therefore, we held that the government was entitled to benefit from the state statute, since the most analogous private individual to the

22

government, a state-licensed physician, would be protected by it.  Scheib, 759 F.2d at 863-64.

Similarly, in this case, we conclude that the most analogous private entity to NHJ is a state-licensed Florida hospital.  NHJ's emergency department provides emergency medical care "to all persons, regardless of age, race, religion, culture of ability to pay" within NHJ's beneficiary population.  Pls.' Ex. 19, p. 4.  Every person within NHJ's beneficiary population is able to receive emergency care at NHJ.  This policy is consistent with the obligations imposed under Fla. Stat. § 395.1041 upon general hospitals that have an emergency department, which requires such hospitals to provide emergency medical care to patients without regard to their "race, ethnicity, religion, national origin, citizenship, age, sex, . . . economic status, or ability to pay . . . ."  Fla. Stat. § 395.1041(3)(f) (2006).  Further, we find that NHJ's emergency department acts consistently with subsection (2)(b)4 of the GSA, which requires "[e]very emergency care facility granted immunity under this paragraph [to] accept and treat all emergency care patients within the operational capacity of such facility without regard to ability to pay . . . ."  Fla. Stat. § 768.13(2)(b)4.  As we have noted, NHJ provides treatment to all persons within its primary beneficiary population without regard to their ability to pay.  Thus, we find NHJ to be situated in "like circumstances" with such

hospitals.

The district court found that NHJ was analogous to a private hospital that treats only a select group of patients. We disagree. Under § 395.002(28) of the Florida Code, a "[s]pecialty hospital" is defined as any facility meeting the definition of a "hospital" under subsection (12) of that section, and which restricts its services to (a) "a defined age or gender group of the population;" (b) the "diagnosis, care, and treatment of patients with specific categories of medical or psychiatric illnesses or disorders;" or (c) "[i]ntensive residential treatment programs" for patients under the age of 18. Fla. Stat. § 395.002(28)(a)-(c). By contrast, within NHJ's beneficiary population, NHJ provides medical care and treatment to all persons; it does not restrict its services to certain subclasses of that population. Therefore, we find NHJ to be analogous to a state-licensed general hospital, not a specialty hospital that provides care only to a select group of patients. We reverse the district court's judgment with respect to the issue of the GSA's applicability to NHJ.

C. Comparative Negligence

"Federal Rule of Civil Procedure 52(a) provides that a district court's findings of fact in actions tried without a jury may not be reversed unless clearly erroneous." Worthington v. United States, 21 F.3d 399, 400 (11th Cir. 1994). A

24

finding of fact is clearly erroneous "when the reviewing court, after assessing the evidence, is left with a definite and firm conviction that a mistake has been committed." Id. (quotation omitted). The district court found that the government's contention that Mr. and Mrs. Turner were comparatively negligent for not having brought "Tracey to a hospital sooner lack[ed] both factual and legal bases." Turner v. United States, 3:03-cv-709-J-25TEM, p. 10 (Aug. 26, 2005). As to the factual basis for the government's argument, the district court determined that, when Tracey presented to the NHJ emergency department, "there remained more than enough time to provide appropriate medical treatment and avoid any permanent injury." Id. at 10-11. The district court concluded that the government's argument lacked a legal basis because, "[e]ven if the parents had unreasonably cared for Tracey prior to his arrival at the hospital, other causes of a patient's condition [are] generally not a legal defense to a claim for subsequent medical malpractice under Florida law." Id. at 11 (citing Stuart v. Hertz Corp., 351 So. 2d 703 (Fla. 1977)).

The district court clearly erred by concluding that the government's argument lacked a basis in law. Under Florida law, a patient's conduct prior to seeking medical attention can be a proximate cause of his or her injury and a defense to medical malpractice. In Vandergrift v. Fort Pierce Mem'l Hosp., Inc.,

25

354 So. 2d 398-99 (Fla. Dist. Ct. App. 1978), a scuba diver sought to reverse a jury verdict finding him 90% negligent for injuries he suffered after failing to seek prompt treatment for the bends, which was caused by ascending too quickly from a dive. The plaintiff presented to an emergency room eight hours after he learned that he had the bends. He was given oxygen, but he was not advised that recompression is the proper treatment for the bends or transferred to a facility that had a recompression chamber. Two years later, the plaintiff discovered "aseptic necrosis in his shoulder caused by a lack of proper treatment in a recompression chamber." Id. at 400. Even though the hospital was negligent in its treatment of the plaintiff, the appellate court affirmed, finding that the evidence was sufficient for the jury to conclude that the plaintiff's negligent delay in seeking care was a contributing proximate cause of his injury.

We find this case to be analogous to Vandergrift. In this case, the government argued that the Turners negligently delayed seeking treatment for Tracey during his asthma attack, and that their negligence was a proximate cause of his injuries. The district court incorrectly held that the Turners' actions could not have been a defense to any subsequent medical malpractice under Florida law. However, we cannot conclude that the district court clearly erred in finding that, factually, Mr. and Mrs. Turner's delay in seeking treatment did not cause Tracey's

injuries.  Therefore, we must affirm the district court's conclusion that the Turners were not comparatively negligent.

### III. CONCLUSION

In this appeal, the government argued that an administrative claim filed on behalf of a minor child does not satisfy the jurisdictional requirements of the FTCA as to his parents' claims, when the child's claim neither lists the parents as "claimants" nor provides a sum certain for their claims.  The government also contended that "reckless disregard" is the proper standard of care in a case against the government under the FTCA, arising from emergency medical treatment provided at a military hospital in Florida.  Finally, the government asserted that the district court erred by holding that, under Florida law, a parent's delay in seeking medical treatment for a child cannot be raised as a defense to a claim of medical malpractice.  As we have explained, the district court erred in exercising jurisdiction over Mr. and Mrs. Turner's FTCA claims and vacate that portion of the award.  Further, NHJ is entitled to protection under the Florida Good Samaritan Act's "reckless disregard" standard of care.  Although the district court incorrectly found that Florida law does not allow a patient's negligent delay in seeking medical treatment to be used as a defense against medical malpractice, we affirm on this issue because the district court's factual finding that the parents' delay did

27

not cause the child's injuries was not clearly erroneous. Accordingly, the district court's judgment is **REVERSED IN PART, VACATED IN PART, AFFIRMED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**