[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14639
Non-Argument Calendar

_____

D. C. Docket No. 06-01144-CV-TCB-1

EMERSON O. DAVIS,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,
BUREAU OF PRISON,
MS. SHOMAN,
Health Service Administrator,
DR. RAFAEL ROMAN,
MD Clinical Director,
DR. H. LOPEZ,
MD, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 9, 2008)**

Before TJOFLAT, BLACK and HULL, Circuit Judges.

PER CURIAM:

Emerson Davis, a pro se federal prisoner, appeals the district court's order granting the defendants' motion to dismiss, or in the alternative, for summary judgment, as to Davis's constitutional claims filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), and his medical malpractice and negligence claims brought under the Federal Tort Claims Act ("FTCA"). After review, we affirm.

## A.     Eighth Amendment Medical Treatment Claim

Davis contends that the medical staff at the United States Penitentiary in Atlanta ("USP Atlanta") was deliberately indifferent when the staff misdiagnosed his skin condition as a staph infection when it was in fact scabies. The district court concluded that Davis failed to exhaust his administrative remedies with regard to this claim because the Bureau of Prisons ("BOP") had denied Davis's administrative grievance as untimely.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), a Bivens action cannot be brought with respect to prison conditions until the prisoner has exhausted available administrative remedies. 42 U.S.C. § 1997e(a); Alexander v. Hawk, 159 F.3d 1321, 1323-24

2

(11th Cir. 1998) (applying the PLRA's exhaustion requirement to <u>Bivens</u> claims).

An untimely grievance "is not sufficient to exhaust . . . administrative remedies for

purposes of the PLRA exhaustion requirement." <u>Johnson v. Meadows</u>, 418 F.3d

1152, 1159 (11th Cir. 2005); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, __, 126 S.

Ct. 2378, 2387-93 (2006).[1]

According to the BOP grievance procedure, a prisoner first seeks informal

resolution. 28 C.F.R. § 542.13(a). If an informal resolution cannot be reached, the

prisoner may file a formal Request for Administrative Remedy on form BP-9. <u>Id.</u>

§ 542.14. The informal request must be completed, and the formal request filed,

within "20 calendar days following the date on which the basis for the Request

occurred." <u>Id.</u> § 542.14(a).

The alleged deliberate indifference to Davis's medical needs occurred

between December 29, 2005 and March 16, 2006,[2] when Davis was treated for the

skin condition at USP Atlanta. Twenty calendar days from March 16, 2006 is

---

[1]We review <u>de novo</u> a district court's grant of summary judgment, apply the same standard as the district court and view all evidence in a light most favorable to the non-moving party. <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1299 (11th Cir. 2002). We also review <u>de novo</u> a district court's dismissal for failure to exhaust administrative remedies under the PLRA. <u>Alexander</u>, 159 F.3d at 1323.

[2]At follow-up visits on March 22, 2006 and March 27, 2006, Davis's skin condition had resolved.

3

April 5, 2006. Although Davis filed his informal request on February 29, 2006,[3] he did not file his BP-9 formal request until April 12, 2006, outside the twenty-day period.[4] Because § 542.14(a) requires both the informal and the formal request to be made within twenty days of the alleged deliberate indifference, Davis's request for an administrative remedy was untimely.[5] Therefore, the district court properly dismissed Davis's Eighth Amendment claim for failure to exhaust.

In any event, Davis failed to present evidence that prison medical staff misdiagnosed his skin condition, much less provided constitutionally inadequate treatment. See, e.g., Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (explaining that mere negligence in medical treatment does not amount to deliberate indifference under the Eighth Amendment). The record shows that

---

[3]We reject Davis's argument that the district court erred in denying his motion for a continuance pursuant to Federal Rule of Civil Procedure 56(f) so that he could obtain a copy of the BP-8 informal request he filed on February 29, 2006. An examination of Davis's Rule 56(f) motion reveals that the basis of this motion was to give Davis an opportunity to obtain information about additional Doe defendants and medical records of other inmates. His Rule 56(f) motion is silent about obtaining copies of administrative requests. Furthermore, on summary judgment the district court was required to accept Davis's averment in his sworn pleadings that he filed his BP-8 informal request on February 29, 2006. See Fowler v. Southern Bell Tel. & Tel. Co., 343 F.2d 150, 154 (5th Cir. 1965); Skrtich, 280 F.3d at 1299. Therefore, it was unnecessary to give Davis additional time to obtain a copy of his informal request.

[4]Davis argues for the first time in his reply brief that he filed his first BP-9 formal request on March 2, 2006. There is no evidence in the record to support this assertion.

[5]Davis's arguments that the twenty-day filing period was tolled until March 31, 2006 when he transferred to USP Coleman and that he has shown special circumstances justifying his failure to properly exhaust his administrative remedies are without merit.

4

medical staff at USP Atlanta never diagnosed Davis with a staph infection. Davis was initially suspected of having and prophylactically treated for a possible Methicillin Resistant Staphylococcus Aureus ("MRSA") infection. Once laboratory results ruled out an MRSA infection, Davis was diagnosed with allergic dermatitis and a fungal infection and prescribed oral antibiotics, a mild steroid ointment and antihistamine injections. When Davis was seen on March 22 and March 27, 2006, his skin condition appeared to have resolved.

On March 30, 2006, Davis was transferred to the United States Penitentiary in Coleman, Florida ("USP Coleman"). The next day, Davis was seen by USP Coleman medical staff after complaining of an itchy rash. USP Coleman's medical staff was not certain whether Davis's skin condition was dermatitis or scabies, but provided medical treatment (antibacterial cream and oral antibiotics) as if Davis had scabies. Although Davis reported medical improvement at his follow-up on April 4, 2006, he has returned periodically to USP Coleman's medical staff to be treated for dermatitis and cellulitis and has been referred to a dermatologist. In short, the undisputed record shows that Davis has never been diagnosed with either a staph infection or scabies, but that his skin condition has been treated throughout his confinement by medical staff at both USP Atlanta and USP Coleman.

5

**B.    FTCA Claims**

The district court concluded that it lacked subject matter jurisdiction over Davis's FTCA claims of negligence and medical malpractice because Davis had failed to exhaust his administrative remedies.

A federal court lacks subject matter jurisdiction over an FTCA claim "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 111-13, 113 S. Ct. 1980, 1983-84 (1993); Turner ex rel. Turner v. United States, 514 F.3d 1194, 1200 (11th Cir. 2008).

On April 14, 2006, Davis filed his administrative FTCA claim with the BOP. On May 5, 2006, while his administrative claim was still pending, Davis filed this action alleging FTCA claims.  Five months later, on October 10, 2006, the BOP denied Davis's administrative claim.  Because the BOP had not "finally denied" Davis's administrative claim in writing at the time Davis filed his suit in federal court, the district court did not err in dismissing the FTCA claims for lack of subject matter jurisdiction.  Furthermore, the dismissal was proper even though Davis's claims were exhausted five months after this action was filed.  See McNeil, 508 U.S. at 110-13, 113 S. Ct. at 1983-84 (affirming district court's dismissal of

6

prematurely filed FTCA complaint even though administrative denial occurred shortly after the complaint was filed and before substantial progress had taken place in the litigation).

**C.    Retaliation Claims**

Davis's complaint alleged that he was retaliated against, in violation of the First and Fifth Amendments, for refusing to share a cell with an inmate whom he believed had a contagious disease.

To state a constitutional retaliation claim, a plaintiff must show that: (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there was a causal connection between the retaliatory actions and the adverse effect on the speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). The district court concluded that Davis had failed to state a retaliation claim because his complaint did not plead facts establishing the third prong of causation.

Davis's verified complaint and summary judgment response recount the incident giving rise to his retaliation claims. On key points, Davis's averments do not differ significantly from those of the prison officials who were present.

On February 24, 2006, Davis and James Stewart, a unit manager at USP Atlanta, had a discussion about Davis's cell reassignment. Stewart told Davis that

7

he was being moved to a cell with inmate James Ward. Davis refused to move because he believed Ward had an infectious skin disease with open, bloody sores on his body and because both he and Ward had bottom bunk passes. Davis avers that Stewart "cuss[ed] at [Davis] telling [Davis] he did not give a shit and [Davis] need[ed] to sleep with another man." Davis admits that, in response, he "cuss[ed] [Stewart] back."

According to Stewart, Davis became "belligerent and threatening." Juel Hawkins, a prison counselor who was present at the meeting with Stewart, averred that Davis became "agitated and started cursing" at Stewart. Stewart gave Davis a direct order to leave the area, but Davis refused. Hawkins then issued a direct order to Davis to leave the office and report to the Lieutenant's office. Davis left the office, but he returned to his cell rather than report to the Lieutenant's office. Hawkins and Stewart then escorted Davis to the Lieutenant's office. Stewart wrote an incident report charging Davis with refusing an order and making threats.

According to Davis, his conduct should have resulted in "a petty incident report which would not stay on [his] record for too long" and lost commissary privileges. However, Stewart and Hawkins falsified the incident report to charge Davis with the more serious offense of threatening another with harm. After a disciplinary hearing on the incident report, Davis was placed in the special housing

8

unit ("SHU") for several weeks.

The problem for Davis is that he presented no evidence that his disciplinary confinement in SHU was causally related to constitutionally protected speech or conduct.[6] Even Davis admits that he cursed at the officer and does not deny that he refused to report to the Lieutenant's office. We note that this is not a case in which Davis filed a grievance relating to his cell assignment and as a result was subjected to discipline. Cf. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (involving inmate who claimed he was disciplined for filing prison grievances and encouraging other inmates to sign a petition of protest). Nor is this a case in which Davis was disciplined after dispassionately complaining in person. Instead, it is undisputed that Davis's verbal complaint was given belligerently, while using curse words, and continued even after Davis was ordered to leave.

Even assuming arguendo that an inmate engages in constitutionally protected speech when he lodges a verbal complaint about his cell assignment,

---

[6]The district court concluded that Davis's complaint failed to state a claim of retaliation because it did not allege facts supporting causation. However, Davis was given notice of his obligations to respond to the summary judgment motion and submitted documentary evidence and declarations in support of his claims, including a verified summary judgment response and statement of material facts. Indeed, Davis's amended complaint was verified by Davis. Accordingly, we affirm the district court's entry of summary judgment in favor of the defendants on Davis's retaliation claims, but do so on the ground that Davis failed to present evidence demonstrating a causal connection between protected speech and the disciplinary action. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993) ("When reviewing a grant of summary judgment, the court of appeals may affirm if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied.").

Davis still has presented no evidence to support a finding that he was disciplined for complaining about his cell assignment. Rather the undisputed record shows that Stewart prepared the incident report that resulted in Davis's discipline because Davis was being belligerent, cursing and refusing to leave when ordered to do so. Therefore, defendants were entitled to summary judgment on Davis's retaliation claims.

For all the forgoing reasons, we affirm the district court's order granting defendants' motion to dismiss or, in the alternative, for summary judgment.

**AFFIRMED.**