[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12474

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 8, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:10-cv-02673-RAL-TGW

RICCY MARADIAGA,
individually and on behalf of J.C.S.M., a minor,
CARLOS G. SORDIA-MARTINEZ,
individually and on behalf of J.C.S.M., a minor,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 8, 2012)

Before MARCUS, PRYOR, and SILER,[*] Circuit Judges.

PRYOR, Circuit Judge:

The primary issue in this appeal is whether the United States is amenable to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–80, for the negligence of medical professionals employed by a federally supported health center when like private professionals would be immune from suit under the Florida Birth-Related Neurological Injury Compensation Act, Fla. Stat. §§ 766.301–16. Riccy Maradiaga and Carlos Sordia-Martinez, on behalf of themselves and their child, J.C.S.M., appeal the dismissal of their complaint against the United States and the denial of their motions for relief from judgment and to reopen the case. Maradiaga and Sordia-Martinez argue that the United States is amenable to suit for the negligence of the professionals employed by the health center because the Compensation Act expressly withholds immunity from federal employees. Maradiaga and Sordia-Martinez also contend alternatively that the district court erred when it refused to abate this action pending a determination by an administrative law judge that J.C.S.M.'s injuries are compensable under the Compensation Act. The United States responds that the Compensation Act cannot

[*] Honorable Eugene E. Siler Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

expand the liability of the United States under the Federal Tort Claims Act beyond that to which an analogous private party would be amenable and that Maradiaga and Sordia-Martinez have waived any right to have the district court abate their action pending the determination by the administrative law judge. Because we agree with the United States, we affirm the dismissal of Maradiaga and Sordia-Martinez's complaint and the denial of their motions for relief from judgment and to reopen the case.

## I. BACKGROUND

Before we address the merits of this appeal, we discuss two matters. First, we provide a brief overview of the Florida Birth-Related Neurological Injury Compensation Act. Second, we recount the underlying facts and procedural history of this appeal.

### A. The Florida Birth-Related Neurological Injury Compensation Act

The Florida Birth-Related Neurological Injury Compensation Act "established the Florida Birth-Related Neurological Injury Compensation Plan," which is a system to "provid[e] compensation, irrespective of fault, for birth-related neurological injury claims." Fla. Stat. § 766.303(1). This no-fault compensation plan provides the exclusive remedy for injuries that are compensable under the plan, except "where there is clear and convincing evidence

3

of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property," and "suit is filed prior to and in lieu of payment of an award" under the plan. Id. § 766.303(2). To recover under the no-fault plan, the representatives of an injured infant must file a claim with the Florida Birth-Related Neurological Injury Compensation Association, which administers the plan. Id. §§ 766.303, 766.305, 766.315. An administrative law judge has the exclusive jurisdiction to determine whether a claim is compensable under the plan. Id. § 766.304. A claim is compensable under the plan only if the administrative law judge determines that the infant's injury is a "birth-related neurological injury" sustained during obstetric treatment by a "participating physician" or a certified nurse midwife under the supervision of a "participating physician." Id. § 766.309, 766.31.

The Compensation Act defines both the covered injuries and the professionals. A "birth-related neurological injury" is an "injury to the brain or spinal cord of a live infant . . . caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired." Id. § 766.302(2). A "participating physician" is "a physician licensed in Florida to practice medicine

4

who practices obstetrics or performs obstetrical services . . . who had paid or was exempted from payment at the time of the injury the assessment required for participation in the [no-fault plan] for the year in which the injury occurred." Id. § 766.302(7). The Compensation Act provides that the term "participating physician" does "not apply to any physician who practices medicine as an officer, employee, or agent of the Federal Government." Id.

If the administrative law judge determines that a claim is compensable under the no-fault plan, then "no civil action" for the covered injury "may be brought or continued in violation of the exclusiveness of remedy provisions" in the Compensation Act. Id. § 766.304. For a compensable claim, the injured infant's representatives are entitled to recover only actual medical expenses, an award of up to $100,000 to the infant's parents or legal guardians, a $10,000 death benefit if the infant passed away, and reasonable attorney's fees and related expenses. Id. § 766.31. If the administrative law judge determines that a claim is not compensable under the no-fault plan, then representatives of the injured infant may "pursu[e] any and all civil remedies available under common law and statutory law." Id. § 766.304.

Awards paid through the no-fault compensation plan are funded by assessments on physicians and hospitals that provide obstetric services. Id. §

766.314(1), (4). All hospitals licensed in Florida are required to pay assessments based on the number of infants delivered in the hospital. Id. § 766.314(4)(a). Physicians who elect to participate in the plan must pay an assessment of $5,000 annually. Id. § 766.314(4)(c), (5)(a). Certified nurse midwives who work with participating physicians and elect to participate in the plan must pay an assessment of $2,500 annually. Id. Subject to some exceptions, physicians who do not participate in the plan, either because they do not perform obstetric services or because they elect not to participate, must pay an assessment of $250 annually. Id.

The Compensation Act also requires "[e]ach hospital with a participating physician on its staff and each participating physician," subject to some exceptions, to provide obstetrical patients with notice of the no-fault compensation plan that "shall include a clear and concise explanation of a patient's rights and limitations under the plan." Id. § 766.716. The Act provides that "[t]he hospital or the participating physician may elect to have the patient sign a form acknowledging receipt of the notice form," in which case the "[s]ignature of the patient acknowledging receipt of the notice form raises a rebuttable presumption that the notice requirements of [the Act] have been met." Id. The notice requirements need not be satisfied "when the patient has an emergency medical condition . . . or when notice is not practicable." Id. The administrative law judge

6

assigned to review a claim under the no-fault plan has exclusive jurisdiction to determine whether the notice requirements were satisfied with respect to that claim. Id. § 766.309(1)(d). The Supreme Court of Florida has held that where the notice requirements are not satisfied, a "claimant can either (1) accept [plan] remedies and forgo any civil suit against any other person or entity involved in the labor or delivery, or (2) pursue a civil suit only against the person or entity who failed to give notice and forgo any remedies under [the plan]." Fla. Birth-Related Neurological Injury Comp. Ass'n v. Dep't of Admin. Hearings, 29 So. 3d 992, 999 (Fla. 2010).

## B. Facts and Procedural History

On December 27, 2008, Riccy Maradiaga, then pregnant with J.C.S.M., was admitted to Lakeland Regional Medical Center with complaints of vaginal bleeding and abdominal pain. That night, J.C.S.M. was born at the Lakeland facility with "severe metabolic acidosis, markedly raised carbon dioxide levels, and depressed oxygen levels requiring mechanical ventilation." Maradiaga and Sordia-Martinez contend that the negligence of the medical staff at the Lakeland facility caused J.C.S.M. to "suffer[] severe injuries including . . . a severe hypoxic brain injury, myocardial and liver dysfunction, seizures, microcephaly, cerebral palsy, visual disturbance, and developmental delay."

Two of the medical professionals who were responsible for the care of Maradiaga and J.C.S.M. at the Lakeland facility were Dr. Karen Stanton, a physician, and Corinne Audette, a certified nurse midwife. When they treated Maradiaga and J.C.S.M., Stanton and Audette were employed by Central Florida Health Care, Inc., a grantee under the Federally Supported Health Center Assistance Act, 42 U.S.C. § 233(g)–(n). The employees of federally supported health centers are considered employees of the Public Health Service for whose negligence the United States may be held liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–80. Both Stanton and Audette had paid the assessments for participants in the Florida Birth-Related Neurological Injury Compensation Plan for the period in which they treated Maradiaga, who signed a form acknowledging that she had received notice of their participation in the plan.

On November 17, 2010, Maradiaga and J.C.S.M.'s father, Carlos Sordia-Martinez, filed on behalf of themselves and J.C.S.M. an administrative claim with the Florida Birth-Related Neurological Injury Compensation Association in which they sought compensation under the no-fault plan. According to Maradiaga and Sordia-Martinez, they have argued in the Florida administrative proceeding that J.C.S.M.'s injuries are not compensable under the no-fault plan and that Maradiaga was not provided with notice of her rights and limitations under the no-

fault plan.

On November 19, 2010, Maradiaga and Sordia-Martinez filed on behalf of themselves and J.C.S.M. a civil complaint in the district court against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–80, for J.C.S.M.'s injuries. In their complaint, Maradiaga and Sordia-Martinez alleged that Stanton and Audette had acted negligently or, in the alternative, "with reckless and wanton disregard for the rights, well-being, and safety of J.C.S.M." The United States moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that the same kind of complaint against a private medical professional who participated in the no-fault compensation plan would be barred by the Compensation Act.

The district court ordered Maradiaga and Sordia-Martinez to respond to the motion to dismiss filed by the United States and to address "the issue of why, at the very least, [the court] should not abate [the] action pending a determination by a Florida administrative law judge as to whether the claim [Maradiaga and Sordia-Martinez] have filed with the Florida Birth-Related Neurological Compensation Association is compensable as a birth-related neurological injury." Maradiaga and Sordia-Martinez filed a response and requested that the district court "refrain from abating" the action. They argued that the immunity conferred in the

9

Compensation Act applied only to injuries sustained during treatment by a participating physician, and Stanton and Audette, as federal employees, were not participating physicians. Maradiaga and Sordia-Martinez failed to identify any other reason that the Compensation Act might not provide the United States immunity from their complaint.

The district court granted the motion to dismiss for lack of subject matter jurisdiction. The district court reasoned that Stanton and Audette were licensed participants in the no-fault compensation plan who held positions analogous to those held by private medical professionals protected by the plan. Because "state law may not attempt to exclude the federal government from the protection provided by a state statute," see Scheib v. Fla. Sanitarium and Benevolent Ass'n, 759 F.2d 859, 864 (11th Cir. 1985), the district court ruled that the Compensation Act likewise barred a civil action for injuries sustained during treatment by Stanton and Audette.

Maradiaga and Sordia-Martinez then filed two motions: a motion for relief under Federal Rule of Civil Procedure 60(b) and a motion to reopen the case. Maradiaga and Sordia-Martinez argued that the district court should abate the action pending the resolution of their administrative claim by a Florida administrative law judge. They alleged that Florida courts typically abated actions

10

that involved a potential claim under the Compensation Act until an administrative law judge determined whether that claim was compensable under the no-fault plan. They offered no explanation in either motion for their failure to advance these arguments earlier. Nor did they cite any new facts or suggest the existence of any new evidence. The district court denied both motions.

## II. STANDARDS OF REVIEW

Several standards govern our review of this appeal. A dismissal "for lack of subject matter jurisdiction presents a legal question that we review de novo." Miccosukee Tribe of Indians v. U.S. Army Corps of Eng'rs, 619 F.3d 1289, 1269 (11th Cir. 2010). We "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). We review for abuse of discretion the denial of a motion for relief from a judgment or order under Federal Rule of Civil Procedure 60(b). Cavaliere v. Allstate Ins. Co., 996 F.2d 1111, 1115 (11th Cir. 1993). That review "is narrow in scope, addressing only the propriety of the denial or grant of relief and does not raise issues in the underlying judgment for review." Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999). The losing party "must do more than show that a grant of [the] motion might have been warranted"; he "must demonstrate a justification for relief so

11

compelling that the district court was required to grant [the] motion." Rice v. Ford Motor Co., 88 F.3d 914, 919 (11th Cir. 1996); see also Cavaliere, 996 F.2d at 1115.

## III.  DISCUSSION

Maradiaga and Sordia-Martinez advance two arguments on appeal.  First, they argue that the United States is not immune from liability for the negligence of Stanton and Audette because the Compensation Act applies only to injuries sustained during treatment by a participating physician, and Stanton and Audette, as federal employees, fail to qualify as participating physicians.  Second, Maradiaga and Sordia-Martinez argue alternatively that the district court erred when it refused to abate this action pending a determination by an administrative law judge as to whether J.C.S.M.'s injuries are compensable under the no-fault plan.  We address each of these arguments in turn.

*A. The Compensation Act Cannot Expand the Waiver of Sovereign Immunity in the Federal Tort Claims Act.*

Maradiaga and Sordia-Martinez contend that the United States is not entitled to immunity from liability for J.C.S.M.'s injuries because the Compensation Act confers immunity only for injuries sustained during treatment performed or supervised by a "participating physician," and the Act excludes

12

officers, employees, and agents of the United States from its definition of "participating physician," Fla. Stat. § 766.302(7). Maradiaga and Sordia-Martinez argue that, because Stanton and Audette were acting as federal employees when they provided the treatment that allegedly caused J.C.S.M.'s injuries, the United States may not rely on the immunity conferred in the Compensation Act to avoid liability under the Federal Tort Claims Act for J.C.S.M.'s injuries. We disagree.

The Federal Tort Claims Act "is a specific, congressional exception to the general rule of sovereign immunity," Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994), that permits liability against the United States for the negligence of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674. The Supreme Court has interpreted the Federal Tort Claims Act "to mean what [it] say[s], namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a 'private person' liable in tort." United States v. Olson, 546 U.S. 43, 44, 126 S. Ct. 510, 511 (2005). And we have explained that the Federal Tort Claims Act "clearly means that state law cannot expand the Government's liability beyond that which could flow from an analogous private

13

activity." Scheib, 759 F.2d at 864.

We held in Scheib v. Florida Sanitarium and Benevolent Ass'n, for example, that a Florida statute that reduced the liability of private health professionals benefitted the United States in a suit under the Federal Tort Claims Act even though the federal medical officer upon whose negligence liability was premised was not licensed by the state. Id. at 861–64. The Florida statute provided that compensatory damages for any "personal injury . . . arising out of the rendition of professional services by a health care provider" had to be reduced by the amounts paid to the victim from all collateral sources. Id. at 863 (quoting Fla. Stat. § 768.50 (1983)) (internal quotation marks omitted). The statute also defined "health care provider" as a physician licensed by the state. Id. (quoting Fla. Stat. § 768.50). We held that the United States was entitled to benefit from that state law even though its medical officer was not licensed by the state because a state law cannot expand the waiver of sovereign immunity in the Federal Tort Claims Act. Id. at 864. That waiver permits no greater liability against the United States than against a like private individual. Id. We reasoned that, "for the purpose of measuring the Government's liability, the most analogous private individual would be a licensed physician practicing family medicine in the State of Florida," and "since such a physician would be entitled to the benefits of [the

14

collateral source statute], the Government is entitled to the benefits of that statute." Id. at 863–64.

Our reasoning in Scheib applies here. Stanton and Audette were both certified participants in the no-fault compensation plan when they treated Maradiaga and J.C.S.M. Because a like private physician would be immune from tort liability for birth-related neurological injuries attributable to his negligence, Fla. Stat. § 766.303(2), the United States is entitled to immunity from tort liability for birth-related neurological injuries attributable to the negligence of Stanton and Audette. The exclusion of "any physician who practices medicine as an officer, employee, or agent of the Federal Government" from the definition of "participating physician" in the Compensation Act, see id. § 766.302(7), cannot expand the waiver of sovereign immunity in the Federal Tort Claims Act because "state law cannot expand the Government's liability beyond that which could flow from an analogous private activity." Scheib, 759 F.2d at 864.

B. *Maradiaga and Sordia-Martinez Waived Any Argument for Abatement.*

Maradiaga and Sordia-Martinez argue alternatively that the district court erred when it refused to abate this action pending a determination by a Florida administrative law judge that J.C.S.M.'s injuries are compensable under the no-fault plan. They contend that, if the administrative law judge determines that

15

J.C.S.M.'s injuries do not qualify as a "birth-related neurological injury" or that Maradiaga was not provided with notice of her rights and responsibilities under the no-fault compensation plan, then the Compensation Act will not foreclose a civil action for J.C.S.M.'s injuries. They also maintain that, under Florida precedents, see, e.g., Bennett v. St. Vincent's Med. Ctr., 71 So. 3d 828, 835 (Fla. 2011), the district court should have abated their action, and the district court, by dismissing their action, failed to protect their right to seek redress for J.C.S.M.'s injuries if their administrative claim is denied. Maradiaga and Sordia-Martinez also contend that the Compensation Act does not foreclose their civil action to the extent that Stanton and Audette "acted with reckless and wanton disregard for the rights, well-being, and safety of J.C.S.M." Cf. Fla. Stat. § 766.303(2).

These arguments fail because Maradiaga and Sordia-Martinez either affirmatively waived or forfeited the right to raise them. When a party invites a ruling by a district court, he affirmatively waives the right to challenge that ruling on appeal. See United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009); Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1293–94 (11th Cir. 2002). And "[i]t is well settled that issues not raised in the district court in the first instance are forfeited." Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011). "To prevail on a particular theory of liability, a party must

16

present that argument to the district court." Fils v. City of Aventura, 647 F.3d 1272, 1284 (11th Cir. 2011). "Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." Id. "That federal courts can take notice of state law does not mean that a party relying upon such law need not cite it to the court or present argument based upon it," or "that federal courts must scour the law of a . . . state for possible arguments a claimant . . . might have made." Cont'l Tech. Servs., Inc. v. Rockwell Intern. Corp., 927 F.2d 1198, 1199 (11th Cir. 1991).

Maradiaga and Sordia-Martinez waived any right to the abatement of this action. In their response to the order that directed them to address whether the district court should abate the action pending the resolution of their administrative claim, Maradiaga and Sordia-Martinez urged the district court to refrain from abatement. When the district court granted their request, they waived any right to complain about it on appeal. See Brannan, 562 F.3d at 1306; Ford, 289 F.3d at 1293–94. Maradiaga and Sordia-Martinez offered the district court no cause to believe that abatement was necessary. They instead gambled that the district court would agree with their argument that Stanton and Audette were not covered by the Compensation Act. That gamble did not pay off.

To the extent that they now argue on appeal that the district court should

17

have abated their action based on their allegation of reckless and wanton conduct, Maradiaga and Sordia-Martinez raised no such argument in the district court. Nor did they cite any Florida law to support that proposition. They forfeited that argument. Douglas Asphalt Co., 657 F.3d at 1152. The district court was under no obligation to scour Florida law in search of support for an argument they never raised. Cont'l Tech. Servs., 927 F.2d at 1199.

The district court did not abuse its discretion when it denied the motions for relief from judgment and to reopen the case. In their motion for relief from judgment, Maradiaga and Sordia-Martinez sought relief under Rule 60(b), Fed. R. Civ. P. 60(b), and they concede that their motion to reopen the case should also be construed as a motion for relief under that same rule, cf. Gonzalez v. Crosby, 545 U.S. 524, 528, 125 S. Ct. 2641, 2645 (2005). "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." Federal's Inc. v. Edmonton Inv. Co., 555 F.2d 577, 583 (6th Cir. 1977); see also Eskridge v. Cook County, 577 F.3d 806, 810 (7th Cir. 2009). To succeed in a challenge to the denial of a Rule 60(b) motion, the movant "must prove some justification for relief." Cavaliere, 996 F.2d at 1115 (internal quotation marks omitted). It is not an abuse of discretion for the district court to deny a motion under Rule 60(b) when that

18

motion is premised upon an argument that the movant could have, but did not, advance before the district court entered judgment. See Couch v. Travelers Ins. Co., 551 F.2d 958, 960 (5th Cir. 1977). Nor is it an abuse of discretion for the district court to deny a motion under Rule 60(b) when the judgment or order from which the movant seeks relief was entered as a result of the movant's choice to rely on an unsuccessful legal theory. See Federal's Inc., 555 F.2d at 583.

## IV. CONCLUSION

We **AFFIRM** the dismissal of Maradiaga and Sordia-Martinez's complaint against the United States. We likewise **AFFIRM** the denial of Maradiaga and Sordia-Martinez's motions to reopen the case and for relief from judgment.