[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 15-13720 & 15-15801

_____

D.C. Docket Nos. 0:12-cv-62064-RNS & 0:13-cv-60443-RNS

BABASOLA KOLAWOLE, et al.,

Plaintiffs-Appellants,

versus

STACEY SELLERS, as Personal Representative of the Estate of Peter Simon Waxtan,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 21, 2017)

Before MARCUS, DUBINA, and WALKER,[*] Circuit Judges

_____

[*] Honorable John M. Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

WALKER, Circuit Judge:

These two related appeals are brought by representatives of the estates of decedents who perished in a plane crash in Nigeria. Plaintiffs appeal from two judgments entered in the United States District Court for the Southern District of Florida (Scola, *J.*) dismissing their claims based upon the doctrine of *forum non conveniens* and denying their motion for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. We conclude that the district court did not abuse its discretion, either in dismissing the claims or in denying the Rule 60(b) motion, and therefore AFFIRM both the judgment and the order of the district court.

## BACKGROUND

The events giving rise to these appeals were tragic. On June 3, 2012, Dana Airlines Flight 992, traveling from Abuja, Nigeria, while on approach to Murtala Muhammed International Airport in Lagos, Nigeria, lost power in both engines and crashed in a densely populated area. All 153 passengers and crew members were killed, along with ten confirmed deaths on the ground. The plane was destroyed in the post-crash fire.

The two flight recorders were analyzed at the U.S. National Transportation Safety Board in Washington, D.C, but only thirty-one minutes of audio could be recovered due to fire damage. The airplane had last undergone maintenance two days before the crash. According to the plane's logs, no mechanical conditions had

been reported during the previous month. Published reports indicated that the accident was likely caused by the flight crew's failure to properly monitor fuel flow to the engines and to activate certain fuel pumps.

The pilot, Peter Waxtan, was a United States citizen who resided in Fort Lauderdale, Florida. Mr. Waxtan's estate remains open in Broward County, Florida. Two suits were separately filed against Mr. Waxtan's estate. On September 18, 2012, twenty plaintiffs filed a complaint, styled *Olojo v. Sellers*, in state court. Defendant Stacey Sellers, Mr. Waxtan's daughter and the representative of his estate, removed that action to federal court. On February 26, 2013, eighteen additional plaintiffs filed a complaint, styled *Obot v. Sellers*, in the Southern District of Florida. The district court consolidated the *Olojo* and *Obot* suits on March 28, 2013.

On April 10, 2013, Sellers moved to dismiss the consolidated action upon the basis of *forum non conveniens*. The district court denied Sellers' motion regarding claims maintained on behalf of United States citizen or resident decedents ("domestic decedents") but granted it with respect to decedents who had not been United States citizens or residents ("foreign decedents"). On February 6, 2015, the district court declined to grant Plaintiffs relief from the judgment pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. The

3

district court granted Plaintiffs' motion for entry of final judgment, pursuant to Rule 54(b), on July 24, 2015. This appeal followed.

On August 4, 2015, some, but not all, Plaintiffs filed a further motion for reconsideration, pursuant to Rule 60(b), which the district court denied on November 30, 2015. Those Plaintiffs then timely appealed. The two appeals were administratively consolidated.

## DISCUSSION

On appeal, Plaintiffs contend that the district court abused its discretion in: (1) granting Sellers' motion to dismiss based upon *forum non conveniens* and (2) denying the final Rule 60(b), which was submitted on August 4, 2015.

We review for abuse of discretion both a district court's dismissal for *forum non conveniens*, *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997), and denial of relief pursuant to Rule 60(b), *Tobinick v. Novella*, 848 F.3d 935, 943 (11th Cir. 2017). Abuse of discretion review is "extremely limited" and "highly deferential." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009) (internal quotation marks and citation omitted). We must affirm unless the district court applied an incorrect legal standard, applied the law in an unreasonable or incorrect manner, followed improper procedures in making a determination, or made findings of fact that are

clearly erroneous. *See Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014).

## I.

## A.

We must first address the timeliness of these appeals. Sellers does not contest that Plaintiffs timely appealed the denial of their August 4, 2015 Rule 60(b) motion. She argues, however, that the appeal from the dismissal of Plaintiffs' claims was not timely. Sellers' argument, in substance, is that the district court's order dismissing the claims was a final judgment. If Sellers is correct, Plaintiffs were required to file their appeal within thirty days of the February 6, 2015 order denying reconsideration, which they did not do. To remedy this error, Sellers argues, Plaintiffs filed an unwarranted motion for entry of final judgment pursuant to Rule 54(b). When the district court granted that motion, Plaintiffs were therefore improperly provided an additional thirty days to file their appeal. However, because the district court's order dismissing Plaintiffs' claims was not a final judgment, we conclude that the appeal was timely.

A party against whom a district court rules typically has thirty days to file a notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A). As this case demonstrates, however, when the thirty day period begins is not always clear. An appeal may normally only be taken from a final judgment. *See* 28 U.S.C. § 1291. The period to

file an appeal of a final judgment begins on the later of either two events: (1) when the district court enters the order constituting the final judgment, *see* Fed. R. App. P. 4(a)(1)(A), or (2) when the court disposes of the last motion seeking relief from the final judgment, Fed. R. App. P. 4(a)(1)(A), (a)(4)(A)(iv), (vi). However, even when a district court enters a non-final judgment, *i.e.*, one that fails to adjudicate all of the parties' claims, it may still certify the judgment as final if "there is no just reason for delay." Fed. R. Civ. P. 54(b). In such a scenario, the thirty day period begins when the court enters the judgment pursuant to Rule 54(b). *See* Fed. R. App. P. 4(a)(1)(A), 4(a)(7)(A)(ii).

Where, as here, multiple plaintiffs seek relief in a consolidated action, there occasionally arises some question as to whether the claims constitute multiple suits or a single suit. Potentially dispositive of whether the dismissal of only some plaintiffs' claims is a final judgment, this question can bear directly upon whether the deadline to file an appeal has passed. Whether two actions are consolidated sufficiently to be one suit turns upon the "extent and purposes of the consolidation." *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1048 (11th Cir. 1989) (citing *Ringwald v. Harris*, 675 F.2d 768, 770 (5th Cir. 1982)). In *Lewis Charters, Inc. v. Huckins Yacht Corp.*, for instance, two independently filed suits remained separate actions because: (1) they were consolidated only for joint hearings and trial, making the consolidation "for limited purposes only" and (2) the

6

suits retained their separate identities because (a) they were to be pleaded separately, (b) each pleading was to be filed in both actions, and (c) the first action was to be tried by a jury before the second would be resolved by the court. *Id.* at 1048-49. The actions, we concluded, were therefore "essentially severed" rather than "merge[d] into a single cause." *Id.* at 1049. Another factor we have considered in assessing the extent of consolidation is whether the actions could have initially been filed as a single action. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1356 (11th Cir. 2002) (per curiam), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S. Ct. 773, 778-79 (2014).

Here, Plaintiffs filed their notice of appeal on August 19, 2015. As Sellers notes, thirty days had elapsed since both the district court's order dismissing Plaintiffs' claims and the order disposing of the various motions seeking reconsideration that Plaintiffs filed prior to submitting their Rule 54(b) motion.[2] Plaintiffs did, however, file their appeal within thirty days of entry of judgment pursuant to Rule 54(b), which occurred on July 24, 2015. As a result, the appeal

---

[2] On August 4, 2015, some Plaintiffs submitted one subsequent motion for reconsideration, which is also at issue on appeal. It was filed, however, both after the court's entry of final judgment pursuant to Rule 54(b) and more than 28 days after the entry of judgment dismissing Plaintiffs' claims. That final Rule 60(b) motion accordingly is not probative of whether Plaintiffs' appeal from the dismissal of their claims was timely. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

7

was timely only if the order dismissing Plaintiffs' claims was not a final judgment and therefore Rule 54(b) certification was necessary to file an appeal.

This is admittedly an unusual scenario because, prior to the court's Rule 54(b) certification, Plaintiffs moved for relief pursuant to Rules 59(e) and 60(b), which is available only when the court has already entered a final judgment, rendering Rule 54(b) certification unnecessary. *See* Fed. R. Civ. P. 59(e), 60(b); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1132 (11th Cir. 1994); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1294-95 (11th Cir. 2003). Sellers seizes upon this tension, arguing that the filing of the motions for reconsideration demonstrates that the court's order was indeed a final judgment. That Plaintiffs styled their briefs as motions for relief pursuant to Rules 59(e) and 60(b), however, does not affect the jurisdiction of this Court. *See Lucas v. Fla. Power & Light Co.*, 729 F.2d 1300, 1301-02 (11th Cir. 1984). Rather, whether the order dismissing Plaintiffs' claims was a final judgment is governed by the dictates of Rule 54(b), *i.e.*, whether the order resolved all of the parties' claims. *See* Fed. R. Civ. P. 54(b).

Plaintiffs originally filed two separate complaints—the *Olojo* action and the *Obot* action. The *Olojo* action included claims of both domestic and foreign decedents while the *Obot* action consisted entirely of foreign decedents. On March 28, 2013, the district court consolidated the two actions for "discovery and trial," while administratively closing the *Obot* action. Consolidation Order at 1-2, *Onita-*

*Olojo v. Sellers*, No. 12-cv-62064-RNS (S.D. Fla. March 28, 2013), ECF No. 21.

In the order from which Plaintiffs appeal, the district court dismissed the claims of all foreign decedents while retaining all claims belonging to domestic decedents.

With respect to the *Olojo* plaintiffs, our analysis is relatively straightforward. The district court's order did not dismiss the claims of all of the *Olojo* plaintiffs and accordingly was not a final judgment. Leave to file an appeal, pursuant to Rule 54(b), was therefore necessary and the appeal was timely.

It is admittedly a closer question whether the court's order was a final judgment as to the claims originally filed as part of the *Obot* action. The district court dismissed the claims of all of the *Obot* plaintiffs. Whether the order was a final judgment, therefore, turns on whether the *Obot* suit was consolidated with the *Olojo* suit such that the two should be considered a single action. If so, the *Olojo* plaintiffs whose claims were not dismissed would also preclude the court's order from constituting a final judgment with regards to the *Obot* plaintiffs.

We ultimately conclude that the *Olojo* and *Obot* suits should be considered one action because: (1) they could have been initially filed as one suit; (2) although the district court did not explicitly state that the consolidation was for all purposes, it did specify that the consolidation was for "discovery and trial," *id.*, and did not impose any limitations on the extent of the consolidation; and (3) the suits did not retain their separate identities because the two actions were merged into a single

9

suit, the *Obot* suit was administratively closed, and all pleadings were to be filed only in the remaining action. The district court's order, therefore, was not a final judgment as to the *Obot* plaintiffs. Those plaintiffs, like the *Olojo* plaintiffs, had thirty days from the court's Rule 54(b) certification to file their appeal and it is also timely.

## B.

We now turn to the district court's dismissal based on *forum non conveniens*. *Forum non conveniens* is a common law doctrine that provides district courts with "inherent power to decline to exercise jurisdiction" with the "central purpose" being "to ensure that the trial is convenient." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (citations omitted). In contrast to the doctrine of venue, in which there is a statutory mechanism by which a district court may transfer a matter to a district that is a more convenient forum, there is not an analogous procedure by which a court with proper jurisdiction may nonetheless transfer a matter to a foreign judicial system that is better suited to adjudicate the claims. But under *forum non conveniens*, a district court may at least dismiss the action, which then allows the plaintiff to re-file the case in the alternative forum. This power should not be exercised lightly, however, because it effectively deprives the plaintiff of his favored forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

10

To successfully move for dismissal based upon *forum non conveniens*, a defendant must demonstrate both that (1) an adequate, alternative forum is available and (2) the public and private factors weigh in favor of dismissal. *Republic of Panama*, 119 F.3d at 951. There is not an exhaustive list of public and private factors, and courts are "free to be flexible." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381-82 (11th Cir. 2009) (citation omitted).

### 1.

Demonstrating the availability of a forum is not an especially onerous burden for a defendant seeking dismissal for *forum non conveniens*. A forum is generally deemed available if the defendant is amenable to process in the other jurisdiction. *Piper*, 454 U.S. at 254 n.22.

Here, Sellers agreed to: (1) consent to jurisdiction in Nigeria, (2) accept service of process from a Nigerian court, (3) waive any applicable statutes of limitations defenses; and (4) concede liability in claims re-filed in Nigeria. Indeed, the availability of Nigeria as a judicial forum is not in serious dispute. The district court thus did not abuse its discretion in holding that Nigerian courts are available to resolve these claims.

### 2.

The parties' principal dispute, rather, is over adequacy. A forum is adequate if it "provides for litigation of the subject matter of the dispute and potentially

offers redress." *King*, 562 F.3d at 1382 (citing *Piper*, 454 U.S. at 255 n.22). To be adequate, however, a forum need not be "perfect." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) (citation omitted).

General allegations of danger are typically insufficient to render a forum inadequate. *See Licea v. Curacao Drydock Co.*, 537 F. Supp. 2d 1270, 1274-75 (S.D. Fla. 2008); *see also Harp v. Airblue Ltd.*, 879 F. Supp. 2d 1069, 1075 (C.D. Cal. 2012); *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 337 (S.D.N.Y. 2008). Regarding partiality and inefficiency, moreover, courts are cognizant that plaintiffs can easily allege inadequacy on these grounds. A defendant urging dismissal for *forum non conveniens*, therefore, still has the "ultimate burden of persuasion," but only where there exists "significant evidence documenting the partiality or delay . . . typically associated with the adjudication of *similar claims*." *Leon*, 251 F.3d at 1311-12 (emphasis added) (citation omitted).

Sellers satisfied her initial burden by providing expert testimony in the form of an affidavit submitted by Professor of Law Fagbohun,[3] who opined that the Nigerian judiciary was in a position to offer "wide legal and equitable remedies for wrongful death in ways that are substantially similar" to the relief available in

---

[3] Professor Fagbohun holds a doctorate degree in law and is a Research Professor with the Nigerian Institute of Advanced Legal Studies (NIALS), where he teaches primarily at the postgraduate level. Before joining NIALS, he was a member of the law faculty at Lagos State University from 1991 to 2009.

12

United States courts. Appellee's Suppl. App., R. 24-1 at 27, No. 15-13720, Mar. 3, 2016.

Plaintiffs countered that Nigeria is an inadequate alternative forum for three reasons: (1) Nigeria is too dangerous and the legal system is both (2) too corrupt and (3) plagued by delay. Plaintiffs relied upon publications by the U.S. Department of State, primarily travel warnings and "Human Rights Reports" from 2011 and 2012. The Department of State, for instance, warned that "[k]idnappings remain a security concern" and "[v]iolent crimes occur throughout the country." Appellants' Br. at 26, No. 15-13720, Nov. 3, 2015. The 2012 Human Rights Report, moreover, cautioned that "[u]nderstaffing, underfunding, inefficiency, and corruption continued to prevent the judiciary from functioning adequately" and that "[t]he executive, the legislature, and business interests . . . exerted undue influence and pressure in civil cases." *Id.* at 25. Plaintiffs also presented the testimony of two expert witnesses. Former Supreme Court Justice Oguntade[4] testified that Nigerian law does not permit a partial disposition of a multiparty tort case and accordingly these claims would require thirty years to litigate. A second

---

[4] Justice Oguntade received his LLB from the University of London in 1964. He then practiced law in Nigeria from 1965 to 1980 before becoming a Judge of the High Court of Lagos State, Nigeria in September of 1980. In 1987, he was appointed to the Court of Appeal, with appellate jurisdiction over all of Nigeria, where he remained until 2004, when he was appointed to the Supreme Court of Nigeria. He retired from the Supreme Court in 2010.

expert, Justice Odunowo,[5] offered a similar opinion. As to the issue of delay, Sellers responded with an additional affidavit of Professor Fagbohun in which he asserted that Justice Oguntade had not taken into account the recent reforms to the Nigerian judiciary. To illustrate his point, Professor Fagbohun identified twenty cases, among a random survey of actions filed between 2007 and 2012, in which no matter took longer than five years to resolve.

The district court did not abuse its discretion in holding that Nigeria is an adequate forum. Plaintiffs failed to identify any specific dangers related to this particular litigation, *see Licea*, 537 F. Supp. 2d at 1274-75, or evidence of partiality related to this type of claim, *see Leon*, 251 F.3d at 1311-12. While the possibility of delay presented a close question, the district court was within its discretion to afford greater weight to the evidence proffered by Sellers. Critically, Professor Fagbohun, in his affidavit, explicitly considered the relatively recent reforms of the Nigerian judiciary, which have resulted in the judiciary resolving cases more expeditiously. We are particularly reluctant to call into question the district court's reasoning in light of the heightened standard Plaintiffs face in alleging inadequacy upon the basis of delay. *See id.*

---

[5] Justice Odunowo is a retired justice of the Federal High Court, Lagos Judicial Division. He holds an LLB from the University of London and practiced law in Nigeria from 1962 to 1966 and 1968 to 1973. He served as Chief Magistrate of the Ogun State of Nigeria and Deputy Chief and Chief Registrar of the Court of Appeal in Lagos. He was elevated to the Federal High Court in 1981, where he served until his retirement in 2000.

Plaintiffs also cite other cases in which courts have held that Nigeria is an inadequate forum. Given the fact-intensive nature of the inquiry and the discretion afforded district courts, these authorities, which deal with different factual situations from the instant case, are of limited probative value. They do not assist Plaintiffs, who must demonstrate a nexus between this particular litigation and the alleged bases for deeming Nigeria an inadequate forum. Many of the cases upon which Plaintiffs rely, moreover, are distinguishable from the present matter. *See Costinel v. Tidewater, Inc.*, No. 10-1567, 2011 WL 446297, at *6 (E.D. La. Feb. 3, 2011) (defendant's evidence consisted entirely of one case and one affidavit, neither of which addressed adequacy with sufficient specificity); *Sector Navigation Co. v. M/V Captain P*, No. 06-1788, 2006 WL 2946356, at *4 (E.D. La. Oct. 13, 2006) (substantive limitations in relevant Nigerian law left plaintiffs without an adequate remedy); *Abiola v. Abubakar*, 267 F. Supp. 2d 907, 918 (N.D. Ill. 2003) (defendant "ma[de] no attempt to show the Court that plaintiffs have an adequate remedy in Nigeria").

Plaintiffs finally argue that, with respect to delay, the district court was required to either (1) hold an evidentiary hearing or (2) accept as true their expert testimony. We disagree. Plaintiffs conflate factual allegations and opinion testimony. In ruling upon motions to dismiss based upon *forum non conveniens*, courts routinely find against plaintiffs without holding an evidentiary hearing,

despite conflicting expert opinion testimony. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282-83 (11th Cir. 2001) (dismissing for *forum non conveniens* despite conflicting expert opinion testimony); *Lisa, S.A. v. Gutierrez Mayorga*, 240 F. App'x 822, 824 (11th Cir. 2007) (per curiam).

3.

When a forum is both available and adequate, courts proceed to analyze the private and public factors relevant to *forum non conveniens*. The assessment of the private factors begins with a determination as to the proper deference to afford the plaintiff's choice of forum: there is normally a "strong presumption" that a plaintiff has chosen a convenient forum. *Leon*, 251 F.3d at 1314. That presumption "weakens," *La Seguridad*, 707 F.2d at 1308 n.7, however, when the plaintiff is not a United States citizen or resident, *Piper*, 454 U.S. at 255-56. Although there is not an exhaustive list of criteria, the private interests courts may weigh include the "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing[] witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Leon*, 251 F.3d at 1314 (ellipses in original) (internal quotation marks omitted) (quoting *Gulf Oil Corp. v. Gilbert*, 220 U.S. 501, 508 (1947)).

16

Here, none of the Plaintiffs or their decedents whose cases were dismissed were United States citizens or residents. The district court properly afforded their choice of forum less deference than that provided to the domestic plaintiffs whose claims were not dismissed. The district court also properly considered the following relevant private factors: (1) most of the liability evidence would be located in Nigeria; (2) much of the damages evidence would be located where each decedent lived prior to the crash, primarily from witnesses who knew the decedent and from the decedent's employment, school, and tax records; and (3) Sellers would likely be prejudiced if the claims remained in the United States, where courts would be unable to compel the cooperation of non-party Nigerian witnesses. There is accordingly no basis to disturb the district court's conclusion that the private factors weighed in favor of dismissal based upon *forum non conveniens*.

### 4.

The final prong of *forum non conveniens* is the public factors, which include: (1) the administrative difficulties stemming from court congestion; (2) the interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems of conflict of laws, or the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n.6.

17

In the present case, the district court reasonably concluded that: (1) a mass-tort case would cause significant delays to the court's already crowded docket, including, at the very least, multiple damages trials; (2) the burden on the jury-serving public of South Florida would be significant; (3) the court would need to resolve conflict-of-law issues, including potentially having to apply Nigerian customary law; and (4) the compelling interest in Nigeria of resolving these claims considering that they stem from one of the worst aviation disasters in the country's recent history. As a result, we cannot find that the district court abused its discretion either in determining that the public factors also weighed in favor of dismissal or in its overall analysis under the *forum non conveniens* doctrine and conclusion that dismissal of the foreign decedents' claims was warranted.

## II.

We finally turn to the appeal from the denial of the August 4, 2015 Rule 60(b) motion. On such a motion, Plaintiffs "must demonstrate a justification for relief so compelling that the district court was required to grant [the] motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (alteration in original) (internal quotation marks and citation omitted).

In their motion for relief, Plaintiffs invoked Rules 60(b)(3) and 60(b)(6). Rule 60(b)(3) provides for relief from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

18

opposing party" while (b)(6) allows for relief for "any other reason that [so] justifies." Fed. R. Civ. P. 60(b)(3), (6). Under Rule 60(b)(6) a party must demonstrate circumstances that are "sufficiently extraordinary" and "[e]ven then, whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996) (citation omitted).

Plaintiffs point to two aspects of their case that, they claim, required the district court to grant their motion: (1) the unique procedural posture of the case and (2) Sellers' initial failure to concede liability in Nigeria.[6] Neither merited reconsideration.

### A.

Plaintiffs dwell extensively upon the fact that, because their appeal was pending before this Court, the district court's order, although final, was unexecuted because the appeal was still pending. Therefore, Plaintiffs argue, the district court was required to grant the requested relief. We disagree.

Plaintiffs are correct that there was less of a concern here that the principle of finality would be undermined should the district court have granted their Rule 60(b) motion, because their appeal of the court's dismissal for *forum non*

---

[6] Two plaintiffs in this action also argued that the district court erred in treating them differently than a similarly situated plaintiff, Pamela Norris, who has asserted a claim against Sellers but is not a party to this appeal. Shortly before oral argument, however, we granted the parties' joint motion to dismiss the appeals of these two plaintiffs

*conveniens* was still pending. That consideration, however, did not require the district court to grant their motion. Plaintiffs rely entirely upon two cases for this proposition. In neither case, however, was the procedural posture the sole, or even primary, factor weighing in favor of relief. Notably, in both cases there was a supervening change in the law that weighed in favor of relief. *See Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 991 (11th Cir. 2010)*; Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987). Thus we cannot conclude that the district court applied the law in an incorrect or unreasonable manner in deciding that the procedural posture did not warrant the requested relief.

### B.

Plaintiffs also accurately note that Sellers initially failed to concede liability in Nigerian court, despite her assurances to the contrary before the district court. The district court treated the concession of liability in Nigeria as a condition precedent to granting Sellers' motion to dismiss. Sellers explained to the district court that counsel representing both her and Dana Airlines in Nigeria inadvertently contested liability on behalf of both parties. Sellers retained new Nigerian counsel, however, who then entered a stipulation conceding liability. Plaintiffs persist in contending that Sellers continues to contest liability, despite her assurances to the contrary. But the district court found that not to be the case, and there is no cause to believe that going forward Sellers will contest liability in Nigeria. As a result,

20

there is no reason to disturb the district court's denial of reconsideration on this ground.

## CONCLUSION

For the reasons stated above, we AFFIRM both the judgment and the order of the district court.